## IVES *v.* SARGENT.

(*Circuit Court, D. Connecticut.* July 23, 1883.)

1. PATENTS FOR INVENTIONS—REISSUE INVALID.

    Reissued letters patent dated October 18, 1881, granted to Hobart B. Ives, as assignee of Frank Davis, for an improvement in door-bolts, *held* invalid by reason of the laches of the plaintiff in not promptly applying to the patent-office to remedy the error claimed to have been made in the original application for the patent.

2. SAME—LACHES, WHEN RENDER REISSUE INVALID.

    The right to have a mistake in a patent corrected when the mistake is plain and forthwith discernible, and improperly narrows the claim, must be speedily exercised, and such right will necessarily be abandoned and lost by unreasonable delay. It is not merely a question as to what information respecting their rights parties actually obtain, but as to what information they might have obtained had they used the means and opportunities at their command.

In Equity.

*Henry T. Blake,* for plaintiff.

*John S. Beach,* for defendant.

SHIPMAN, J. This is a bill in equity to restrain the defendant from the alleged infringement of reissued letters patent, dated October 18, 1881, to the plaintiff, as assignee of Frank Davis, for an improvement in door-bolts. The original patent was granted to Davis, as inventor, on April 9, 1878, and the application for a reissue was filed April 1, 1881. The specification of the reissue says that the invention consisted "in combining a cylindrical outer case with an inner case, constructed and recessed as hereinafter described, said cases combining to inclose the operating mechanism, and to form a fulcrum and guide therefor; in combining with said cases a bolt, pitman, and crank; and in a pitman or connecting-rod performing the functions of both pitman and spring, as the above are hereinafter more fully set forth and claimed." The pitman, which performed the functions of both pitman and spring, was, in fact, the essence of the invention, and is claimed alone, and in combination with the bolt and crank to hold the bolt, in the third and fourth claims of the reissue as follows:

"(3) The combination of the bolt, c, provided with the lug, c, pitman, E, operating as a pitman and spring, and crank, D, to hold the bolt, substantially as set forth. (4) In a cylindrical door-bolt, the pitman, E, arranged and adapted to operate as a pitman and spring, substantially as set forth."

In the original specification the patentee was made to say that his invention consisted "chiefly in combining a cylindrical outer casing, constructed and recessed as hereinafter described, said casings combining to inclose the operating mechanism, and to form a fulcrum and guide therefor; and in combining with said casings a bolt, pitman, and hub, so constructed and arranged as to operate in the same

without pivot pins or any additional devices, all as hereinafter more fully described and claimed."

The second of the three claims of the original patent, and the only one which mentioned the pitman, was as follows:

" (2) The combination of casing, A, having opposite holes, $a$, $a$, with inner casing, B, having transverse groove, $b^6$, and slot, $b^7$, flat hub, D, having crank arm, $D^1$, and the bolt and pitman, substantially as set forth."

It is manifest that the draughtsman had no idea that the pitman spring, uncombined with the two casings, was to be claimed or was regarded as a distinctive part of the invention.

The defendant, as president and head of the manufacturing business of the corporation known, as "Sargent & Co.," is infringing the third and fourth claims only of the reissue, but has not infringed either claim of the original patent. The defense is that the third and fourth claims of the reissue are not for the invention described or claimed in the original patent, and are therefore void. 'The inventor, a carpenter by trade and not an educated man, invented the device in November, 1877, and applied in January, 1878, to Mr. Terry, a patent solicitor in New Haven, to procure him a patent, specifying, as the invention to be patented, the pitman which, in connection with the crank, held the bolt and answered the double purpose of pitman and spring. Terry, being in ill health and therefore not then doing business, sent the case to his agent in Washington, with Davis' instructions. In due time the papers were returned to Terry, and were signed by Davis, who read them and supposed that the application "covered the spring which" he "intended to be patented." Terry did not read the application. The patent was received by Davis in April, 1878. It does not appear whether it was then examined or not. The plaintiff did not see the patent until after it was assigned to him on May 28, 1879. Whether he then read it or not he does not know; but in the latter part of 1880, after the defendant had begun to infringe, he did read it, and supposed from the drawings that the pitman spring, as a separate invention, was secured by the patent, until he was undeceived by Mr. Terry. In the spring of 1878 the plaintiff received from Davis a license to use the pitman spring upon another than the patented bolt.

In September, 1880, Sargent & Co. commenced work upon the patterns for the infringing bolt, and made the first bolts December 1, 1880. The plaintiff insists that the invention of the pitman acting also as a spring, independent of its connection with the casings, is shown in the specification of the original patent, and that, therefore, the correction of the mistake by the introduction of a proper claim was not new matter. The defendant claims that there is no hint in the original patent that the pitman was to have the function of a spring. But if there had been a full description of it, yet as there was no suggestion that the pitman spring could accomplish a beneficial

result disconnected from the two casings, the reissue contained a different invention from any which was suggested in the original specification, and therefore the invention of the third and fourth claims is new matter. It seems to me that it is useless to discuss this question, because, if the alleged mistake could have been safely and permanently corrected by seasonable application to the patent-office, the patentee and assignee had, at the time of the application for a reissue, lost their rights by their own laches.

The supreme court, in *Miller* v. *Brass Co.* 104 U. S. 350, declared that the right to have a mistake in a patent corrected, when the mistake was plain and forthwith discernible, and improperly narrowed the claim, must be speedily exercised, and that the right would be necessarily abandoned and lost by unreasonable delay. The court said: "In reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent." This doctrine of the loss, through laches, of the right which a patentee would otherwise have had to correct mistakes, has been favorably referred to by the supreme court in at least four cases since the decision of *Miller* v. *Brass Co.*

In this case the mistake which is claimed to have occurred in consequence of the draughtsman's failure to know the nature of the invention was one which a person conversant with the invention and with the subject of patents would have seen upon the first inspection of the application or of the patent. The inventor read the application, but, reading with unintelligent eyes, did not perceive that his invention was not attempted to be secured. He made no inquiries of the intelligent solicitor who witnessed his signature to the application, but returned the paper to Washington. The assignee took a license or permission to use the pitman spring in the spring of 1878, and afterwards bought the patent without ever having read it, and cannot say positively that he examined it until after the infringement

The patent was issued April 9, 1878, and on December 1, 1880, two years and seven months afterwards, the defendant, who probably had read it, commenced to make non-infringing bolts.

It would be useless to suggest that the plaintiff moved with alacrity after he knew of the defect in his patent, and that the patentee's ignorance was an excuse for his inefficiency; for the palpable negligence of the one in buying a patent without knowing or reading its contents, and the ignorance of the other, when knowledge was at hand, do not bar the consequences of delay. Quoting the language of the supreme court in regard to laches respecting claims or rights which did not pertain to patents, "it is not merely a question as to what information respecting their rights parties do actually obtain, but as to what information they might have obtained had they used

v.17,no.5—29

the means and opportunities directly at their command." *Hoyt* v. *Sprague*, 103 U. S. 613. It is obvious that the present case is one of hardship to an honest purchaser of a patent, but the supreme court, after having repeatedly declared, in substance, that reissues with enlarged claims are to be the exception and not the rule, in the recent cases say that the "rule of laches should be strictly applied," and that it is too late for the inventor to regain an exclusive right in his invention, when, after a delay which is unreasonable, if men are to be required in the matter of their patents to act with ordinary prudence and promptness, the thing invented has gone into public use, and individuals are expending money in its manufacture.

The bill is dismissed.